**SO ORDERED.**

**SIGNED this 6th day of December, 2018.**



_____
Robert E. Nugent
United States Bankruptcy Judge

_____

DESIGNATED FOR ONLINE PUBLICATION

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| IN RE:<br><br>SOCIAL NETWORKING TECHNOLOGY, INC.,<br><br>                           Debtor. | Case No. 18-10177<br>Chapter 7 |
| DARCY D. WILLIAMSON, Trustee<br><br>                           Plaintiff,<br>vs.<br><br>FIVE POINT VENTURES, LLC;<br>GLO SNT LLC;<br>LESLIE G RUDD LIVING TRUST u/d/a March 31, 1999;<br>JK GARVEY INVESTMENT COMPANY LP;<br>CHAD J. STAFFORD;<br>TYMBER LEE & JENNIFER LEE REVOCABLE TRUST; and<br>L.R.I. CO. SERVICES, LLC.<br><br>                           Defendants. | Adv. No. 18-5091 |

1

## **ORDER DENYING DEFENDANTS' RULE 12(b)(6) MOTION TO DISMISS**

Chapter 7 trustees routinely avoid the transfer of liens in estate assets under §§ 544, 547 and 548 of the Bankruptcy Code. Procedurally, this requires more than objecting to the contested lienholder's secured proof of claim. The trustee filed this complaint to avoid "liens" she says were created within 90 days of the debtor's filing a chapter 7 case. But despite having filed proofs of claim that assert liens in all of this debtor's assets, these defendants now argue that they have no liens to avoid and want the Trustee's complaint to be dismissed for failing to state a claim.

Each defendant signed a non-binding term sheet memorializing their intention to lend the debtor money in return for convertible promissory notes secured by liens on all its assets. The debtor filed UCC-1 financing statements describing those assets. The defendants advanced the debtor an aggregate total of $500,000. No notes or other transaction documents were ever signed. Each defendant has filed a secured proof of claim. The lack of an authenticated security agreement describing the collateral means the defendants' liens are not "security interests" as defined in the Bankruptcy Code and the Uniform Commercial Code, but the financing statements may remain the basis for a "charge against or interest in property to secure payment…." That is the Bankruptcy Code's definition of

2

"lien."[1] The transfers that created them may be avoidable in appropriate circumstances.[2]

Facts

According to the complaint, Social Networking Technology, Inc. (SNT) filed a chapter 7 petition on February 12, 2018. On November 14, 15, 16, or 17, of 2017, each of these defendants executed a term sheet that provided, in part, that each would lend the debtor funds and receive a "Senior Secured Convertible Note," convertible to the debtor's common stock, and secured by a "UCC security interest" in all of the company's assets.[3] The term sheet provided that, except for a clause prohibiting its disclosure to third parties (until the proposed financing closed), the document "represents the current thinking of the Board of Directors" and "does not constitute a legally binding agreement." On November 22, 2017, the debtor filed financing statements in Delaware and Nevada.[4] The financing statements named the defendants as secured parties and described the collateral as all assets, including collateral of certain types or categories. Then the defendants funded the loans in the aggregate amount of $500,000. No loan agreement, security agreement, promissory note or other transactional documents were signed. When the debtor

---

[1] 11 U.S.C. § 101(37).
[2] Darcy D. Williamson appears in her capacity as the chapter 7 trustee for Social Networking Technology, Inc. The named defendants appear by their counsel Edward J. Nazar of Hinkle Law Firm.
[3] The term sheets' "Collateral" section qualifies that the security interests would be a "first lien" except as to those assets pledged to SNT's accounts receivable factor. SNT's chairman of the board executed the term sheets on December 21, 2017 on behalf of the company.
[4] The debtor is listed on the Nevada statement, but SNT Media, Inc. is listed as the debtor on the Delaware statement.

3

filed its petition, each defendant filed a proof of claim describing their respective claims as "secured" by "all assets of the debtor," and attached the term sheet and financing statements.[5] The trustee filed this proceeding to avoid whatever liens these defendants may assert and they moved to dismiss her complaint for failing to state a claim under Fed. R. Bankr. P. 7012 and Fed. R. Civ. P. 12(b)(6). Their argument, in a nutshell, is that because the term sheet is not a "legally binding agreement" and no security documents (other than the UCC-1s) were executed, they possess no avoidable liens and the trustee cannot state a claim. For the reasons set out below, this assertion fails.

Analysis

*Rule 12(b)(6) Standards*[6]

The trustee relies on the old standard for determining the sufficiency of a complaint as one where "it appears beyond doubt that the [trustee] can prove no set of facts in support of [her] claim that would entitle [her] to relief."[7] That rule, derived from *Conley v. Gibson,* was abrogated by the United States Supreme Court in 2007 in *Twombly*.[8]

In determining whether a complaint states a claim upon which relief can be granted, the Court takes the complaint's factual allegations as true and determines

---

[5] *See* Claim Nos. 68, 72, 77, 81, 88 and 106. The claimants under No. 68-2 and No. 81-2 subsequently amended their claims from a secured claim to an unsecured claim.
[6] Fed. R. Bankr. P. 7012(b) makes Fed. R. Civ. P. 12(b)(6) applicable in adversary proceedings.
[7] *See* Adv. Doc. 21, p. 4 and Adv. Doc. 26, p. 2.
[8] *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957). *See Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 561-64 (2007) (discussing *Conley's* "no set of facts" phrase and concluding it has "earned its retirement").

4

whether the complaint states a claim that is plausible on its face by deciding if the facts pled are sufficient to allow a court to draw a reasonable inference of the moving party's liability on the claims for relief asserted.[9] This complaint more than meets that standard.[10]

*Lack of Security Agreement*

The defendants are correct that the absence of an authenticated security agreement means no "security interest" attached to the assets. Section 101(51) of the Bankruptcy Code defines a security interest as a "*lien* created by an agreement."[11] Section 9-203(b) of the Uniform Commercial Code (as adopted in Kansas) provides that a security interest doesn't attach to property until value is given, the debtor has rights in the collateral, and the debtor has authenticated a

---

[9] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly,* a claim has facial plausibility when the factual content pled allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (enough facts must be alleged to nudge the claim across the line from conceivable to plausible); *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (In reviewing the sufficiency of the complaint, the court assumes the truth of the plaintiff's well-pleaded factual allegations and views them in the light most favorable to the plaintiff.).

[10] In addition to the complaint, the Court also considers the documents referred to in the complaint (defendants' proofs of claims and certain bankruptcy schedules) and documents attached to the complaint (note term sheets and financing statement filings). *See Hampton v. root9B Technologies, Inc.,* 897 F.3d 1291, 1297 (10th Cir. 2018) (district court properly considered Securities and Exchange Commission filings on a Rule 12(b)(6) motion to dismiss where they were referred to in the complaint, they were central to the plaintiff's claim, and their authenticity was undisputed). The Court can consider these materials without converting the motion to one for summary judgment under Rule 12(d). *See Thomas v. Kaven,* 765 F.3d 1183, 1197 (10th Cir. 2014).

[11] 11 U.S.C. § 101(51) (Emphasis added). *See also* KAN. STAT. ANN. § 84-1-201(b)(35) (2017 Supp.) (defining a "security interest" as an interest in personal property that secures payment or performance of an obligation); § 84-9-102(a)(73) (2017 Supp.) (defining a "security agreement" as an agreement that creates or provides for a security interest).

5

security agreement that describes the collateral.[12] While the defendants gave value and the debtor had rights in its assets, there was no security agreement. But the defendants may be taken to assert some sort of interest based on their financing statements and, in the proofs of claim they signed and filed under penalty of perjury, they claim liens in all of the debtor's assets.

Security interests are but one species of "lien" under the Bankruptcy Code. Section 101(37) defines "lien" as "a charge against or interest in property to secure payment of a debt...."[13] The fact that the parties never fully documented this transaction does not prevent the trustee from avoiding the purported transfer of the debtor's property interests as a § 547(b) preference, a § 544(a) transfer avoidable by a hypothetical lien creditor, or a § 548(a)(1)(B) constructive fraudulent transfer. These defendants may claim some interest in or charge against the debtor's property by virtue of their UCC-1 financing statements and their proofs of claim. They cannot hide from the trustee's avoiding powers in the holes they left in their own transactional documents. However imperfect or unperfected their "liens" may be, those remain fair game for the trustee to avoid and preserve under chapter 5 of the Code.

Objecting to the defendants' proofs of claim isn't enough to avoid their liens. Fed. R. Bankr. P. 3007(b) prohibits an objecting party from including claims for relief that are specified in Rule 7001 governing adversary proceedings in a claims objection. Lien avoidance and proceedings to determine the validity, priority, or

---

[12] KAN. STAT. ANN. § 84-9-203(b) (2017 Supp.).
[13] 11 U.S.C. § 101(37).

**6**

extent of "other interest[s]" in property are specifically provided for in Rule 7001(2).[14] Thus, while the trustee may incorporate a claims objection into her complaint, she cannot avoid the defendants' liens with a mere claim objection.

Being satisfied that the complaint states claims that are plausible on their face and supported by reasonable inferences drawn from pleaded facts, I need not address the parties' discussion of the effect of judicial estoppel here. I do note, however, that the defendants have taken wholly inconsistent positions about their secured status in this case, apparently for tactical reasons. Either their proofs of claim or their motions are truthful; both can't be.[15]

The defendants' motion to dismiss for failure to state a claim is denied. As provided by Fed. R. Bankr. P. 7012(a) they are granted 14 days from the date of this order's entry to file their answers or otherwise plead to the trustee's complaint.

###

---

[14] Fed. R. Bankr. P. 7001(2)

[15] As Official Form 410 recites, filing a fraudulent claim is a crime punishable by up to five years imprisonment, $500,000 fine, or both. *See* 18 U.S.C. §§ 152, 157, and 3571. The Court observes that defendants Five Point Ventures, LLC and Leslie G. Rudd Living Trust amended their proofs of claim from secured to unsecured, *after* filing the instant motion to dismiss. *See* Claim Nos. 68-2 and 81-2.

7